CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

April 12, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 7:20-cr-00076 |
| v. | ) |
| | ) |
| JORDAN TYREE BONDHILL, | ) By: Michael F. Urbanski |
| | )     Chief United States District Judge |
| Defendant/Petitioner | ) |

## MEMORANDUM OPINION

Jordan Tyree Bondhill, a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 204. The government moved to dismiss Bondhill's motion, arguing that he is not entitled to relief, and Bondhill filed a response. ECF Nos. 214, 218. After reviewing the briefing and the record, the court **DENIES in part** Bondhill's motion to vacate, set aside, or correct his sentence. The court will appoint counsel to represent Bondhill at an evidentiary hearing to determine whether Bondhill asked his attorney to file a notice of appeal on his behalf and if so, the timing of any such request.

I. Background

On February 24, 2021, Bondhill, along with two codefendants, was named in a 5-count superseding indictment alleging offenses related to distribution of methamphetamine. Bondhill was charged with knowingly and intentionally distributing 5 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 1); and with conspiring to possess with intent to distribute and distribute 50 grams or more of methamphetamine and 500 grams of a mixture and substance containing methamphetamine,

in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count 5). Superseding Indictment, ECF No. 36.

Bondhill was represented by attorney Phillip Lingafelt. On August 24, 2021, Bondhill entered into a Rule 11 plea agreement in which he agreed to plead guilty to Count 5. As part of the agreement, Bondhill stipulated that USSG § 2D1.1 (Nov. 2018) applied to his case. That section provides a base offense level of 30 for a drug weight of at least 50 but less than 150 grams of methamphetamine (actual). Plea Agreement, ECF No. 82 at 3. Bondhill previously had signed an Agreed Statement of Facts (SOF) in which he agreed with the government that beginning no earlier than August 2019 he had conspired with his co-defendants to distribute 50 grams or more of methamphetamine. In particular, Bondhill agreed that on March 19, 2020, he drove his codefendants to meet with a confidential informant who bought an ounce of methamphetamine with a purity weight of 25.81 grams. SOF, ECF No. 83 at 3. On April 16, 2020, Bondhill sold a confidential informant methamphetamine that had a purity weight of 28.23 grams. Id.

Two guilty plea hearings were held in this case. The first hearing was held on August 25, 2021, and conducted via Zoom. Tr. of First Guilty Plea H'rg, ECF No. 213 at 2–3. At that hearing, Bondhill stated under oath that he had read the superseding indictment, the written plea agreement, and the SOF, and understood the charges made against him. Id. at 8, 10–11. He testified that he had agreed with others to possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture containing methamphetamine. Id. at 12. Bondhill further stated that he had received a copy of the plea agreement, reviewed it with his attorney, and signed it. Id. Bondhill confirmed that his

2

signature at the end of the agreement indicated that he agreed to its terms. Id. at 13. The government noted the provision where the parties had agreed to a stipulated drug weight of at least 50 grams but less than 150 grams of methamphetamine (actual) which produced a base offense level of 30. Id. at 14. Bondhill confirmed that he understood the terms of the plea agreement. Id. at 16. He agreed that no one had attempted to force, pressure, or coerce him to plead guilty. Id. The government summarized the elements of Count 5, including that it would have to prove a drug quantity of 50 grams of pure methamphetamine or 500 grams of a mixture of methamphetamine. Id. at 17.

The court summarized the constitutional rights that Bondhill gave up as part of the plea agreement, including his right to a trial and the rights to which defendants are entitled at trial. Id. at 28–29. The court explained that Bondhill also was giving up his right to appeal, except for any matter that could not be waived, and his right to collaterally attack the judgment, except for bringing a claim of ineffective assistance of counsel. Id. at 29–31. Bondhill stated that he understood his waiver of rights. Id. at 29–31.

Even though Bondhill had stated that he understood and agreed with the terms of the plea agreement, when the court asked him if had had agreed with his co-defendants to distribute methamphetamine in the Roanoke area, Bondhill responded, "I don't know about, like, agree, but I guess in terms of the law, I did, yes, sir." Id. at 35. The following exchange then took place:

THE COURT: Well, did you -- did you get methamphetamine from Mr. Andrews and sell it to other people?

THE DEFENDANT: I got to answer that, I guess?

THE COURT: Well, you know, you don't have to answer it because you haven't pled guilty yet, but I need to make sure that there's a sufficient factual basis for this. So no, you don't have to answer it if you don't want to.

THE DEFENDANT: There's sufficient factual basis to it.

THE COURT: Okay. Well, did you agree with Mr. Andrews and Mr. Cotton that the three of you would sell methamphetamine?

THE DEFENDANT: Yes, sir.

THE COURT: Did you get some methamphetamine from Andrews and sell it to others?

THE DEFENDANT: I guess.

THE COURT: No, no, no.

MR. LINGAFELT: Your Honor, I think he's reluctant -- I think he's reluctant to speak against Mr. Andrews, and that's the problem; not that he's reluctant to admit guilt.

THE COURT: Okay, well, let's take a step back. Let me ask the question this way. Thank you for that, Mr. Lingafelt. Mr. Bondhill –

THE DEFENDANT: Yes, sir?

THE COURT: -- did you agree with others to purchase methamphetamine and sell it to other people?

THE DEFENDANT: Yes, sir.

THE COURT: Did you do that in Roanoke in 2019 and throughout 2020?

THE DEFENDANT: I'm not sure of the dates, but that's probably right, sir.

THE COURT: But let me just ask you, this statement of facts says that on or about March 19, 2020, you drove Cotton and Andrews to meet a confidential informant, and the informant purchased an ounce of methamphetamine from Cotton. Is that right?

THE DEFENDANT: I'm not sure about other people's transactions. I've been in cars with people while drugs were being sold to them, yes.

THE COURT: Okay. I'm not accepting this plea agreement. I am -- I do not -- I am not convinced that there's a sufficient factual basis for this plea agreement. I am not accepting it.
. . .

4

Id. at 35–37.

The court left it to Bondhill and his attorney, Phillip Lingafelt, to decide whether to proceed to trial or hold another guilty plea hearing in person. Id. at 38. Prior to the adjournment of court, Bondhill stated, "I mean, I just didn't want to incriminate nobody else with what I said. I admit my guilt. I mean, I don't feel like we need another hearing. I mean, like, this is the plea I wanted." Id. at 39.

The second guilty plea hearing was held in person on September 1, 2021. The court read the language of Count 5 of the indictment into the record, including the allegation that Bondhill conspired with his co-defendants to distribute 50 grams or more of methamphetamine, or 500 grams or more of a mixture or substance containing methamphetamine. Tr. of Second Guilty Plea H'rg, ECF No. 212 at 5–6. Bondhill confirmed his understanding of the charge. Id. at 6. The court noted that the quantity of methamphetamine was important to the determination of the penalty in the case and explained that the amount of methamphetamine in Bondhill's case was punishable by a term of imprisonment of ten years to life. Bondhill said he understood. Id. at 7.

Bondhill confirmed that he had read the indictment and discussed it with his attorney. Id. at 10–12. He had read the plea agreement, discussed it with his attorney, initialed it, and signed it. Id. at 12–14. The government read the terms of the plea agreement into the record, including the paragraph setting out the drug weight to which he was agreeing, and Bondhill said he understood it and agreed to the terms. Id. at 14–17. Bondhill confirmed that no one had coerced, pressured, forced, or made him plead guilty to the charge. Id. at 18. The government explained what it would have to prove to get a conviction,

5

including that the drug weight involved was 50 grams of pure methamphetamine or 500 grams of a mixture of methamphetamine. Id. at 19. The court clarified that because Count 5 charged that Bondhill had agreed with others to distribute 50 grams or more of actual methamphetamine or 500 grans or more of a substance containing a mixture of methamphetamine, that the government did not have to prove that Bondhill himself distributed that amount of drugs, but only that the agreement involved that amount of drugs and it was reasonably foreseeable to Bondhill that the conspiracy involved that amount of drugs. "In other words, pleading guilty to Count Five doesn't mean that you physically handled that amount of drugs. It means that the overall agreement between you and these other folks rose up to that level of drug quantity." Id. at 20. Bondhill said he understood. Id.

In discussing possible sentences, the court explained that the statutory range of sentencing was ten years to life. The guideline range calculation would begin with a base offense level of 30 because Bondhill had stipulated to distributing "at least 50 grams, but less than 150 grams, of actual methamphetamine." Id. at 25–26. Bondhill said he understood.

The court explained the constitutional rights Bondhill was giving up by pleading guilty, including the right to appeal except for matters that were not waivable, and the right to challenge his conviction via collateral review, except for narrow circumstances. Bondhill said he understood. Id. at 28–30. Bondhill said that he was fully satisfied with the advice and representation his attorney had given him and said he did not have any questions. Id. at 30. Attorney Lingafelt said that he and Bondhill had reviewed documents as well as audio and video recordings provided by the government and had discussed that a person does not have to be a big player in a conspiracy to be convicted of conspiracy. Id. at 31.

6

The government described the facts it would have to prove at trial, including the amount of methamphetamine involved. Id. at 32–34. Bondhill agreed with the summary of evidence. Id. at 34. Bondhill said he had reviewed the statement of facts with his attorney and signed the document. Id. He agreed that he had conspired with his co-defendants to distribute at least 50 grams of actual methamphetamine or 500 grams of a mixture of methamphetamine. Id. at 35–36. When asked if he had any questions, Bondhill said he did not. Id. at 36–37. Bondhill pled guilty to the charge and the court accepted his plea. Id. at 37–39.

A sentencing hearing was held on December 17, 2021. Bondhill stated that he remained fully satisfied with the advice and representation provided by his attorney. Tr. of Sent. Hr'g, ECF No. 161 at 2. The court calculated Bondhill's guidelines sentencing range as 130 to 162 months, based on the drug weight. Id. at 14. Bondhill addressed the court and thanked his attorney for "being [his] voice and helping [him] to the best of his ability." Id. at 27. The court entered judgment against Bondhill, sentencing him to the statutory minimum sentence of 120 months to be followed by a 5-year term of supervised release. J., ECF No. 142. Bondhill did not appeal his sentence.

On January 30, 2023, the court received Bondhill's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. ECF No. 204.[1] Bondhill argues that his attorney provided ineffective assistance of counsel because (1) Bondhill wanted to proceed to trial because the purity of the methamphetamine that he was accused of distributing "was not accurate as an

---

[1] Although the motion was received by the court more than one year after judgment became final, the government does not argue the motion was untimely as Bondhill claimed he placed the motion in the prison mail system prior to expiration of the limitations period. Mot. to Dismiss, ECF No. 214 at 7–8.

7

indicator of his culpability;" (2) even if he pled guilty, the issue of the purity of the methamphetamine was a mitigating factor that warranted a sentence below the guideline range; (3) his attorney did not discuss whether the government had witnesses that would testify against him if he went to trial; (4) Bondhill was concerned that if he went to trial, one of his co-defendants would give false testimony against him but his attorney was not concerned about that and encouraged Bondhill to plead guilty; (5) his attorney failed and refused to object to the drug weight at sentencing, which "more likely than not would have proved to be reasonable" because his co-defendant's statements regarding Bondhill's possession of firearms was not credible; (6) his counsel failed to argue at sentencing that Bondhill's adjusted offense level and his lesser relative culpability were mitigating evidence; and (7) he asked his attorney to file a notice of appeal on his behalf but his attorney did not do so. Mot., ECF No. 204 at 5–7.

## II. Analysis

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

> "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, at *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

> "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, ... and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

### A. Effect of Waiver

As part of the plea agreement, Bondhill expressly waived his right to appeal on the grounds listed in 18 U.S.C. § 3742(a), or on any other ground, except as to any issue which cannot be waived by law. The waiver included the following language: "I am knowingly and

9

voluntarily waiving any right to appeal. By signing this agreement, I am explicitly and irrevocably directing my attorney not to file a notice of appeal. <u>Notwithstanding any other language to the contrary, I am not waiving my right to appeal or to have my attorney file a notice of appeal, as to any issue which cannot be waived by law</u>." Plea Agreement, ECF No. 82 at 7. Bondhill also waived his right to collaterally attack his sentence, except for an attack based on ineffective assistance of counsel. Id. at 8.

A waiver of appeal and collateral attack is valid if the waiver was knowing and voluntary. In the absence of extraordinary circumstances, a properly conducted Rule 11 colloquy establishes the validity of the waiver. United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016) (citing United States v. Copeland, 707 F.3d 522, 529 (4th Cir. 2012), and United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005)). A court also must determine whether the issue appealed is within the scope of the waiver. Copeland, 707 F.3d at 528.

At the second guilty plea hearing, Bondhill stated that he had gone over the plea agreement in detail with his attorney, had been able to ask his attorney questions, and his attorney had explained the agreement to him. Tr. of Second Guilty Plea Hr'g, ECF No. 212 at 12–13. Bondhill said he thought he had a good understanding of the terms of the plea agreement, reviewed and initialed every page, and signed the agreement indicating that he agreed to its terms. Id. at 14. Counsel for the government read the terms of the plea agreement into the record, including that Bondhill waived his right to appeal and collaterally attack his sentence, except for any issue that could not be waived as a matter of law. Id. at 14–16. Bondhill told the court that he understood the terms of the plea agreement, had no questions about it, and agreed with its terms. Id. at 17. Accordingly, the record establishes

10

that Bondhill knowingly and intelligently waived his right to appeal and collaterally attack his sentence and thus the waiver is valid.

In addition, the court finds that Bondhill's challenge to his conviction falls within the scope of the appeal waiver as his claims relating to the drug weight in his case and the calculation of the sentencing guidelines go to the heart of his conviction and sentence. Accordingly, he has waived those claims. However, in accordance with the agreement, he may bring an ineffective assistance of counsel claim.

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

11

### (1) Guilty Plea

The Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). In order to satisfy the "prejudice" requirement under Strickland, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

> Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas," United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

Lee v. United States, 582 U.S. 357, 368–69 (2017). In addition, a defendant must convince the court that a decision to go to trial rather than plead guilty would have been rational under the circumstances. United States v. Richardson, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam) (internal citations omitted).

Bondhill appears to argue that he entered his guilty plea involuntarily after his attorney refused to challenge the drug weight in his case and did not fully investigate Bondhill's concerns that his codefendant would testify falsely against him. "[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). Because guilty pleas waive the constitutional right to a trial, they "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Id. "The longstanding test

12

for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill, 474 U.S. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977) (internal punctuation omitted)). Absent extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established. United States v. Rambert-Hairston, 824 F. App'x 179, 180 (4th Cir. 2020) (per curiam).

### a. Drug Weight

Bondhill alleges that he asked his attorney to challenge the purity of the drug weight attributed to him but that the attorney refused to discuss a challenge or objection to the drug weight. Bondhill implies that in the absence of an objection or challenge to the drug weight, he felt pressured to plead guilty. He also appears to assert that his attorney was ineffective because he failed to object to the drug weight at sentencing and had he done so, "the objection would have proved to be reasonable" when it was discovered that his co-defendant's statements regarding Bondhill's possession of firearms was not credible.

However, Bondhill's assertion that his attorney did not properly explain matters to him or should have objected to the drug weight during the plea negotiations or at sentencing, is not supported by the record. As set forth above, Bondhill testified under oath that he had read, understood, agreed with, initialed, and signed the plea agreement, which set

13

forth the drug quantity in his case. He was given opportunities at both guilty plea hearings to speak to the court about any shortcomings in his attorney's representation of him and declined to do so. He was asked at both hearings if he had been pressured or coerced into pleading guilty and testified that he had not. See Tr. of First Guilty Plea Hr'g, ECF No. 213 at 5–6, 10–20; Tr. of Second Guilty Plea Hr'g, ECF No. 212 at 5–7, 11–20. At sentencing, Bondhill testified that he remained fully satisfied with the advice and representation provided by his lawyer. Tr. of Sent. Hr'g, ECF No. 161 at 2. The court summarized the indictment and the plea agreement on the record, including that Bondhill was subject to a base offense level of 30 based on drug weight. Id. at 2–3. During his allocution at sentencing, Bondhill made no mention of any objection he had to drug weight. He thanked the prosecution for proposing and negotiating a plea agreement, and also thanked his lawyer for speaking for him and helping him "to the best of [his] ability." Id. at 27.

Based on his sworn testimony at the guilty plea hearings, his allocution at the sentencing hearing, and his initials and signature on the plea agreement, the court finds that Bondhill fully understood and agreed to the finding on drug weight in his case and that he entered his guilty plea knowingly and voluntarily. The record does not show that Bondhill's counsel was ineffective for failing to argue about the drug weight at sentencing because the parties stipulated to the drug weight as part of the plea agreement. Nor does the record support a finding that Bondhill was pressured or coerced into pleading guilty because his attorney did not challenge the drug weight in his case, or that he suffered any prejudice because his attorney did not argue about drug weight at sentencing. Accordingly, Bondhill's

claim of ineffective assistance of counsel based on his attorney not challenging or arguing about drug weight is **DISMISSED**.

### b. Testimony of Co-Defendant and Other Inculpatory Evidence

Bondhill claims that his attorney did not discuss whether the government had witnesses that would testify against him if he went to trial, and also claims that he (Bondhill) was concerned that if he went to trial, one of his co-defendants would give false testimony against him. He then argues that his attorney was not concerned about the possibility of false testimony and encouraged Bondhill to plead guilty. The court is puzzled by this assertion, because it appears that Bondhill was concerned that if his case went to trial, his co-defendant would offer false but incriminating testimony against him, and his attorney ignored his concerns about the possibility that the co-defendant would testify. This assertion seems contrary to Bondhill's overall complaint that he was forced to plead guilty against his will. In any event, as discussed below, the court is satisfied that Bondhill's attorney adequately discussed the evidence with him and discussed the potential for damaging testimony from his co-defendant.

Attorney Lingafelt submitted an affidavit as part of the government's motion to dismiss. Lingafelt stated that Bondhill decided to plead guilty after review of the discovery materials provided, an evaluation of the evidence, and discussions about the pros and cons of pleading guilty, agreeing to the government's proposed plea agreement, negotiating with the government about the plea agreement, or trying the case. Bondhill was given an opportunity to review the discovery materials provided by the government, which included written materials and video with accompanying audio. Lingafelt further explained that the

15

government initially proposed that Bondhill agree to a guideline offense level of 32 based on the drug weight alleged. However, Bondhill would not agree to that offense level and after further negotiations, the parties agreed to a base offense level of 30. Aff. of Phillip R. Lingafelt, ECF No. 214-1 at 1.

Lingafelt also stated that he and Bondhill discussed the potential testimony of one of the co-defendants and reviewed the testimony of the co-defendant before the grand jury. Although the name of the co-defendant was redacted, Bondhill was able to discern that it was the co-defendant's testimony. Lingafelt and Bondhill discussed the fact that if the co-defendant were believed, the government likely would allege and seek to prove at trial a greater drug weight than that which supported the base offense level of 30. Lingafelt opined that if the jury believed the co-defendant, Bondhill likely would be convicted. Lingafelt further advised Bondhill that the government would likely call agents to bolster the co-defendant's testimony. In addition, even without the co-defendant's testimony, the government had evidence of controlled buys totaling more that 50 grams of actual methamphetamine. Id. at 2.

Lingafelt said that Bondhill reached the decision to accept the plea agreement and plead guilty after discussions regarding the evidence in the case, the options available to him, theories of the case, and possible strategies. Lingafelt shared with Bondhill his perspective of the evidence and his thoughts on the likelihood of success at trial but said that he did not try to persuade Bondhill to plead guilty and did not make the decision for him. Id. at 2–3. Lingafelt's affidavit is supported by Bondhill's sworn testimony at the two guilty plea hearings that he understood the terms of the plea agreement and that no one had attempted

16

to coerce, pressure, or force him to plead guilty. Tr. of First Guilty Plea Hr'g., ECF No. 213 at 16; Tr. of Second Guilty Plea Hr'g, ECF No. 212 at 18. Lingafelt's affidavit is further supported by Bondhill's statement at sentencing that he remained fully satisfied with the advice and representation provided by Lingafelt.

Bondhill counters that he and Lingafelt had conversations that are not part of the record and that the conversations unduly influenced him to plead guilty. Resp., ECF No. 218 at 1. However, Bondhill does not provide any details as to the timing or substance of the conversations they had or explain how the conversations influenced him to plead guilty when he did not want to do so. Without providing such evidence, Bondhill cannot meet his burden of showing that his attorney rendered ineffective assistance by failing to review all the evidence and properly advise Bondhill as to his options with regard to accepting the plea agreement and pleading guilty or proceeding to trial.

Bondhill also argues that his attorney failed to assert to the court that his total offense level of 27, which included a three-point reduction for acceptance of responsibility, was mitigating evidence as to his culpability. Mot., ECF No. 204 at 6. However, the record shows that Lingafelt not only argued to the court that Bondhill was less culpable than his co-defendants, but also argued that he was "less culpable enough to earn the minor role reduction" and asked the court to grant the reduction. Tr. of Sent. Hr'g, ECF No. 161 at 9. The court declined to grant the reduction but said it would consider Bondhill's role in the conspiracy as part of the 18 U.S.C. § 3553(a) factors. Id. at 9–11.

The court finds that Bondhill has not met his burden of showing that Lingafelt failed to identify or investigate witnesses who might have testified against Bondhill at trial or that

Lingafelt did not properly argue at sentencing that Bondhill was less culpable than his co-defendants. Accordingly, the court **DISMISSES** Bondhill's claim that he received ineffective assistance of counsel based on these allegations.

### (2) Failure to File Appeal

Bondhill also argues that his attorney was ineffective for failing to file an appeal when Bondhill asked him to do so. The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). This is true even when a defendant has waived the right to appeal as part of a plea agreement. Garza v. Idaho, 139 S.Ct. 738, 747 (2019); United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007).

Bondhill states in his motion that he asked Lingfelt to file a notice of appeal but the attorney did not do so. Mot., ECF No. 204 at 7. Bondhill does not describe when or by what means he asked Lingafelt to file the notice of appeal, and Lingafelt denies that Bondhill asked him to file the appeal. Lingafelt Aff., ECF No. 214-1. However, because it is well-established that an attorney who disregards instructions from a defendant to file a notice of appeal acts in a professionally unreasonable manner and a defendant need not show that an appeal would have merit, the court must determine if Bondhill asked Lingafelt to file a notice of appeal and if so, when he made the request. Accordingly, counsel will be appointed to represent Bondhill at an evidentiary hearing, where the issues will be limited to whether he asked Lingafelt to file a notice of appeal on his behalf and the timing of any such request.

18

III. Conclusion

Based on the foregoing, the court **DENIES in part** Bondhill's § 2255 motion to vacate, set aside, or correct his sentence, ECF No. 204, and **GRANTS in part** the government's motion to dismiss, ECF No. 214. Bondhill's ineffective assistance of counsel claims based on his attorney's failure to object to drug weight, properly advise him regarding his guilty plea, and argue mitigating evidence is **DISMISSED**. The court will appoint counsel to represent Bondhill at an evidentiary hearing limited to the issue of determining whether he asked his attorney to file a notice of appeal on his behalf and if so, the timing of the request.

An appropriate order will be entered. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and accompanying Order to Bondhill.

It is so **ORDERED**.

Entered: April 11, 2024

Michael F. Urbanski
Chief United States District Judge